UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEIAM ABO-HASSAN,

    Plaintiff,

vs.                                                          Case No. 12-14421

GOLD STAR MORTGAGE                        HON. AVERN COHN
FINANCIAL GROUP, CORPORATION,

    Defendant.

_____/

**MEMORANDUM AND ORDER
GRANTING DEFENDANT'S MOTION TO DISMISS (Doc. 8)[1]**

**I.  INTRODUCTION**

This is another one of many cases in this district involving a default on a mortgage loan and an eventual foreclosure, but with a twist.  Plaintiff Heiam Abo-Hassan (plaintiff) is suing defendant Gold Star Mortgage Financial Group, Corporation (defendant) claiming that defendant should never have approved her mortgage loan application.  She says her four-page loan application that was prepared by defendant, to which she initialed, signed and certified but claims not to have read,[2] overstated her income by $206.00 per month.

---

[1] Although this matter was originally scheduled for hearing, upon review of the papers, the Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

[2] In fact, plaintiff justifies not reading the terms of her mortgage loan before initialing and signing the papers by stating that, "Judge Richard Posner of the 7th Circuit does not fully read the terms of a mortgage at closing!" (Doc. 11, p. 9) (citing David Lat, Do Lawyers Actually Read Boilerplate Contracts? Richard Posner and Evan Chesler don't; do you?, Above the Law (June 22, 2010, 2:42 PM), http://abovethelaw.com/2010/06/do-lawyers-actaully-read-boilerplate-contracts-judge-ric

Defendant granted plaintiff a mortgage in 2008. Plaintiff stopped making payments and lost her home to foreclosure in 2010. She does not claim an interest in the property but says defendant should pay damages for approving the mortgage loan that led to the eventual foreclosure. The complaint asserts the following claims, phrased by plaintiff as follows:

(I)     Fraud and Misrepresentation;

(II)    Breach of Fiduciary Duty;

(III)   Negligence;

(IV)    Violation of Credit Repair Organizations Act; and

(V)     Violation of Michigan Mortgage Brokers, Lenders, and Servicers Act.

Now before the Court is defendant's motion to dismiss (Doc. 8). For the reasons that follow, the motion is GRANTED. This case is DISMISSED.

## II. BACKGROUND

Plaintiff submitted a mortgage loan application to defendant on February 22, 2008 (Doc. 1-1, pp. 19-22), and, on the same day, entered into a mortgage agreement (Id. at 10-14) evidenced by a note (Id. at 16-17). The principal on the loan was $99,216.00 (Id. at 16). The loan was to be paid over thirty years at $618.98 per month (Id.). On the same day that plaintiff obtained the loan, she agreed to assign servicing on the mortgage to Flagstar Bank, FSB effective April 1, 2008 (Id. at 24).

Some time later, plaintiff defaulted on the loan and foreclosure proceedings

---

hard-posner-doesnt-do-you/. According to the article, Judge Posner of the Court of Appeals for the Seventh Circuit stated at a conference that he did not read the hundreds of pages of documents associated with his mortgage. Id. Plaintiff's loan application was four pages; she initialed the first two pages and signed the last two pages.

commenced.[3] The property was sold at a sheriff's sale on July 16, 2010. The redemption period expired and plaintiff did not redeem.

On September 12, 2012, plaintiff filed suit in Wayne County Circuit Court.

On October 5, 2012, defendant removed the case to this Court (Doc. 1).

### III. LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint. To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007). See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient

---

[3] The parties do not provide any details about when plaintiff defaulted on her loan obligation and when the foreclosure proceedings started. The parties also do not provide details about the foreclosure process, and plaintiff does not challenge the foreclosure.

factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id. at 678 (internal quotation marks and citation omitted).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, (3) public documents, and (4) letter decisions of government agencies which are appended to the motion. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S.Ct. 2499, 2509 (2007). Here, the Court has considered documents relating to the mortgage and the foreclosure which are referenced in the complaint and central to plaintiffs' claims.

## IV. DISCUSSION

The Court has trouble understanding what legal damages, if any, plaintiff is claiming she suffered. As defendant accurately summarizes,

> Plaintiff's Complaint is based on the absurd legal theory that [defendant] made a false representation to itself on Plaintiff's loan application (which she verified, signed, and submitted); gave Plaintiff a loan upon which she defaulted; and somehow this fact pattern caused damage to Plaintiff.
>
> In addition to this core logical absurdity, Plaintiff's complaint is defective for numerous other reasons. It cobbles together time-barred claims, inapplicable statutes, and improperly pled allegations which do not remotely state any cognizable cause of action under state or federal law.

(Doc. 8, p. 9). Notwithstanding, the frivolousness of plaintiff's legal theory, the Court will analyze each claim in turn.

### A. Count I: Fraud and Misrepresentation

4

Count I of plaintiff's complaint alleges that defendant, through both verbal and written disclosures, materially misrepresented the nature of the loan. Specifically, plaintiff's complaint alleges,

> 21. These representations as to plaintiff's qualification and ability to afford the loan, and the fees paid as part of the transaction, changed the entire nature of the financing transaction.

(Doc. 1-1, p. 5). Plaintiff's claim has no merit.

Under Michigan law, to prove a claim of fraudulent misrepresentation or common-law fraud, a plaintiff must satisfy six elements:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) the defendant made it with the intention that the plaintiff should act upon it; (5) the plaintiff acted in reliance upon the representation; and (6) the plaintiff thereby suffered injury.

Roberts v. Saffell, 280 Mich. App. 397, 403 (2008) (citations omitted).

Here, as defendant correctly notes, plaintiff's "fraud claim is littered with defects" (Doc. 8, p. 5). Plaintiff says that defendant overstated her income by $206.00 per month and she could not afford the mortgage payments. However, as support for her position, plaintiff points to loan documents that she signed and submitted to defendant. To the extent that any material misrepresentation was made, it was made by plaintiff, the signatory to the loan application, not defendant. Further, the note clearly showed the monthly payments that plaintiff would be required to pay. She did not object. In fact, she made several payments on the loan without objecting that her monthly income was

5

misrepresented on the loan application. Her claim is belied by the loan application, the mortgage, and the note.

Plaintiff claims that defendant "was able to pull off its scam through the simple expedient of a rushed closing. [Plaintiff] was never in a position to thoroughly review her documents, and never knew she had a reason too [sic]" (Doc. 11, p. 9). With great enthusiasm as noted above, plaintiff points the Court to an "Above the Law Blog" entry discussing Judge Richard Posner of the Court of Appeals for the Seventh Circuit, and a statement Judge Posner made that he does not fully read the terms of a mortgage at closing (Id.). Unfortunately for plaintiff, if she did not read the loan application and other mortgage documentation she signed, certified and submitted herself, that is not a legal defense. See, e.g., Watts v. Polaczyk, 242 Mich. App. 600, 604 ("Michigan law presumes that one who signs a written agreement knows the nature of the instrument so executed and understands its contents.") (citation omitted). There is no indication that defendant fraudulently changed plaintiff's income amount and plaintiff would have easily known whether she could afford the loan payments by looking at any of the documentation that she signed.

### B. Count II: Breach of Fiduciary Duty

Count II of plaintiff's complaint alleges that plaintiff placed her "faith, confidence, and trust in defendant Gold Star in representing her to issue or find a mortgage" (Doc. 1-1, p. 5). Notwithstanding, plaintiff says defendant "abused and betrayed that reliance by placing [plaintiff] in a loan she could not afford, taking excessive fees and kickbacks, and through its other actions through the application and closing processes" (Id.).

This Court has previously recognized that, "to prevail on a claim of breach of fiduciary duty under Michigan law, [plaintiff] must show that [s]he 'reasonably reposed faith, confidence, and trust' in the alleged fiduciary." Heaton v. Bank of Am. Corp., No. 10-12394, 2011 WL 3112325, at *2 (E.D. Mich. July 26, 2011) (citing Rose v. Nat'l Auction Group, Inc., 466 Mich. 453, 469 (2002); Dietrich Family Irrevocable Trust v. Greco Title Co., No. 274970, 2008 WL 509845, at *3 (Mich. Ct. App. Feb. 26, 2008)). However, "Michigan law does not recognize the imposition of fiduciary duties under these circumstances," where there is nothing more than a creditor/debtor relationship between a lender and a borrower. See, e.g., Ankerman v. Am. Equity Mortg., Inc., No. 1:08-CV-1103, 2009 WL 1212820, at *3 (W.D. Mich. April 30, 2009) (citing Farm Credit Servs. Of Michigan's Heartland, PCA v. Weldon, 232 Mich. App. 662, 680-81 (1998)). Even assuming that a fiduciary relationship can arise out of a lender/borrower relationship, plaintiff has done nothing more than recite the elements necessary to claim a breach of fiduciary duty. Such bare-boned recitals are not enough to survive a Rule 12(b)(6) motion. Therefore, this claim fails as a matter of law.

### C. Count III: Negligence

In count III, plaintiff claims that defendant changed the information on plaintiff's loan application and was negligent in placing her into a loan she could not afford. Plaintiff's claim fails on two fronts. First, this Court has recognized that "the relationship between a borrower and lender will generally not establish a lender's duty to the borrower to exercise reasonable care in determining the borrower's eligibility for a loan, except in unusual cases where the lender and borrower have a special relationship that warrants imposing such a duty on the lender." Heaton, 2011 WL 3112325, at *5 (citing Ulrich v. Fed. Land Bank of

St. Paul, 192 Mich. App. 194, 196 (1991). Plaintiff cannot establish a special relationship sufficient to impose such a heightened duty on defendant.

Second, even if plaintiff could establish a special relationship, the ship has sailed on her negligence claim. In Michigan, a negligence claim must be brought within three years. Mich. Comp. Laws § 600.5805(10). Here, plaintiff's loan was approved on February 22, 2008. Any claim that defendant was negligent in approving the loan is time-barred. Further, this would not be an appropriate case for tolling of the statute of limitations because defendant did nothing to conceal the alleged misrepresentation of plaintiff's income– it was clearly contained in the documents that plaintiff signed.

### D. Count IV: Violation of Credit Repair Organizations Act

In count IV, plaintiff claims defendant violated the Credit Repair Organizations Act (CROA), 15 U.S.C. § 1679a, et seq, by misrepresenting plaintiff's income on her application. Plaintiff's claim has no merit and fails for two reasons. First, the CROA applies to "credit repair organizations." See 15 U.S.C. § 1679a(3). Defendant is not a credit repair organization and did not provide credit repair services to plaintiff. See Jackson v. Tel. Chrysler Jeep, Inc., No. 07-10489, 2009 WL 928224, at *6 (E.D. Mich. March 31, 2009) ("Courts have noted that the CROA makes a distinction between 'credit counseling' services, which are prospective in nature, and 'credit repair' services, which retrospectively offer 'false hopes of absolution for confessed past credit sins.'"). Second, as explained above, plaintiff is the one who represented her income on her application to defendant, which she signed and certified; defendant did not submit an application to itself.

Even if the Court agrees with plaintiff that defendant made a representation to itself, her claim under the CROA fails. At least one court has held that, even if a mortgage lender

8

is a "person" subject to the CROA as a "credit repair agency," Congress did not intend to extend liability under the CROA for a person making a false statement to itself. Hayrioglu v. Granite Capital Funding, LLC, 794 F. Supp. 2d 405, 415 (E.D. N.Y. 2011) (citing Whitley v. Taylor Bean & Whitacker Mortg. Corp., 607 F. Supp. 2d 885, 899 (N.D. Ill. 2009)). Thus, assuming the CROA applies to defendant and the Court buys plaintiff's argument that the representation on the application was made by defendant rather than plaintiff, the CROA does not allow liability for a statement defendant made to itself.

**E. Count V: Violation of Michigan Mortgage Brokers, Lenders, and Servicers Act**

Count V of plaintiff's complaint alleges a violation of the Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act (MBA), MCL § 445.1651, et seq. The MBA prohibits a mortgage broker from engaging in "fraud, deceit, or material misrepresentation in connection with any transaction governed by this act." Mich. Comp. Laws § 445.1672(b). The Court has previously recognized that, where a plaintiff fails to state a claim for fraud, a claim under the MBA also fails. See Heaton, 2011 WL 3112325, at *4; see also Yaldu v. Bank of Am. Corp., 700 F. Supp. 2d 832, 846 (E.D. Mich. 2010) (reasoning that a claim under the MBA has no merit where a plaintiff cannot allege a sufficient fraud claim). Therefore, this claim must be dismissed.

## V. CONCLUSION

For the reasons stated above, defendant's motion to dismiss is granted and the case is dismissed.

SO ORDERED.

12-14421 Heiam Abo-Hassan v. Gold Star Mortgage Financial Group, Corporation

                          s/Avern Cohn            
                          AVERN COHN
                          UNITED STATES DISTRICT JUDGE

Dated: January 23, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, January 23, 2013, by electronic and/or ordinary mail.

                          S/Sakne Chami            
                          Case Manager, (313) 234-5160